UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES RANDLE, | |
| Plaintiff, | No. 18 C 7890 |
| v. | Judge Thomas M. Durkin |
| WALTER NICHOLSON, et al. | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Charles Randle, an inmate at Stateville Correctional Center, alleges that Stateville officials and Wexford Health Sources, Inc. violated his constitutional rights under the Eighth and Fourteenth Amendments because they were deliberately indifferent to his medical needs. R. 59. Some defendants answered Randle's complaint[1], while others—Warden Sherwin Miles, Warden Walter Nicholson, and Wexford Health Sources—moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* R. 61; R. 76. For the following reasons, Miles and Nicholson's motion is granted in part and denied in part, and Wexford's motion is granted.

**Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must

---

[1] The defendants who have filed answers include: Dr. Evaristo Aguinaldo, Dr. Christian Okezie, P.A. La Tanya Williams, Sgt. Terrell Pork, Sgt. Ovidiu Botan, and Warden David Gomez.

1

provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

Randle is an inmate housed at the Stateville Correctional Center. R. 59 ¶¶ 4, 12. He alleges that on June 28, 2018, he was moved to a segregation unit called X-House. *Id.* ¶ 15. Upon transfer to his new cell, Randle told Sargent Terrell Pork, Sargent Ovidiu Botan, and Officer Michael Bubash that he had a medically-issued low bunk permit. *Id.* ¶¶ 1, 15. Nevertheless, Randle alleges that he was placed in a cell with an inmate who also had a low bunk permit and who already occupied the

2

bottom bunk. *Id.* ¶ 15. Randle says that he asked Botan and Bubash if he could place his upper bunk mattress on the floor of the cell and thereby avoid sleeping on the top bunk. *Id.* ¶ 16. Botan and Bubash denied Randle's request and informed him that sleeping on the floor was a safety and security concern. *Id.*

The next morning, on June 29, 2018, Randle fell from the top bunk, causing his head to slam onto the concrete floor. *Id.* ¶ 17. Randle says that the fall knocked him unconscious and that Bubash ignored his requests for medical attention. *Id.* A day later, Randle saw Warden Nicholson during the warden's tour of X-House. *Id.* ¶ 18. Randle told Nicholson that he needed immediate medical attention due to the injuries he suffered from the fall. *Id.* He also told Nicholson that his low bunk permit had not been honored by prison staff. *Id.* Randle alleges that Nicholson ignored his complaints. *Id.*

For two days, Randle made repeated requests for medical assistance to no avail. *Id.* ¶ 19. He says that he experienced terrible headaches and that he could not eat or sleep due to the neck and head pain. *Id.* Then, on July 2, Randle saw Dr. Evaristo Aguinaldo, who ordered an x-ray of Randle's back but did not prescribe pain medications. *Id.* ¶ 20. The x-ray was taken three days later. *Id.* ¶ 21. On July 9, Randle saw Physician Assistant La Tanya Williams because he could not turn his head as a result of the fall. *Id.* ¶ 22. Williams allegedly told Randle that she could not do anything for him but would schedule Randle for an appointment with Dr. Christian Okezie. *Id.* When Randle saw Dr. Okezie eleven days later, Dr. Okezie allegedly told Randle that he suffered from "lower disc injuries" and recommended

that Randle "keep moving and stretching so he wouldn't stiffen up." *Id*. Dr. Okezie did not provide Randle with pain medication. *Id*. Randle alleges that he continues to suffer from constant head and neck pain to this day. *Id*. ¶ 24.

Randle filed this action *pro se* in November 2018. *See* R. 1. After resolving a series of procedural issues, the Court granted Randle's request for attorney representation in February 2020. R. 43. With the help of counsel, Randle then filed his Fourth Amended Complaint. *See* R. 59. The complaint purports to assert three counts under 42 U.S.C. § 1983. Count I alleges that Nicholson and other individual defendants were deliberately indifferent to Randle's medical needs because they failed to ensure that he received prompt and adequate medical care after he fell out of his bed. Count II alleges that Nicholson and other individual defendants were deliberately indifferent to Randle's medical needs because they ignored his requests to honor his low bunk permit. Count III alleges that Wexford Health Sources' policies are deliberately indifferent to inmates' serious medical needs because they aim to increase Wexford's profitability at the cost of inmate well-being.

Miles and Nicholson moved to dismiss the complaint, as did Wexford. The Court considers the motions in turn.

## Analysis

Warden Miles

Although the complaint names Warden Miles as a defendant in her individual capacity, it does not assert any allegations against her. Randle's response brief to Miles's motion to dismiss explains that he originally named Miles as a defendant

because he mistakenly thought that she was the current warden of Stateville and that he needed to include her in the complaint in order to effectuate any injunctive relief he may be awarded. *See* R. 74 at 2. Randle further explains that the current warden of Stateville is actually Defendant David Gomez. *Id.* As such, Randle says that Miles is not a necessary party and requests leave to dismiss Miles without prejudice. *Id.* The Court grants that request.

Warden Nicholson

Randle brings two claims against Warden Nicholson in his individual capacity under 42 U.S.C. § 1983.[2] Count I alleges that Nicholson was deliberately indifferent to Randle's medical needs because he failed to ensure that Randle received appropriate medical attention following Randle's fall from his bunk bed. *See* R. 59 ¶¶ 25-29. Randle claims that his pain and injuries were exacerbated by Nicholson's inaction. *Id.* ¶ 28. Count II, by comparison, alleges that Nicholson was deliberately indifferent to Randle's medical needs by ignoring Randle's "notifications" about his low bunk permit. *Id.* ¶ 31. According to Randle, Nicholson's failure to honor Randle's low bunk permit caused Randle to fall from his top bunk. *Id.* ¶ 34.

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display deliberate indifference to serious medical needs of prisoners." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (quotation marks omitted). To state a claim for deliberate indifference based on a failure to

---

[2] Although Warden Nicholson is no longer the warden of Stateville, the complaint alleges that he was the warden when the events relevant to this action occurred. *See* R. 59 ¶ 3.

5

provide adequate medical treatment, a plaintiff must allege facts sufficient to show that he suffered from "(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). "[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turn[s] a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (citing *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996)).

Turning first to Count II, Randle's claim against Nicholson is dismissed because no allegations appear in the complaint suggesting that Randle told Nicholson about his low bunk permit prior to the fall. While Randle alleges that he asked Defendants Pork, Botan, and Bubash to honor his low bunk permit, he never made the same or similar requests to Nicholson. And while Randle says that he told Nicholson that his low bunk permit had not been honored, he did so *after* he fell out of his bunk; Nicholson therefore could not have disregarded the risk that Randle could have fallen out of his bed. Count II is accordingly dismissed without prejudice.

Count I, however, does not share the same fate. As stated, Count I alleges that Randle verbally told Nicholson that he needed immediate medical attention while Nicholson was touring X-House on June 30, 2018, two days after the fall. R. 59 ¶ 18. Randle says that he explained to Nicholson how he fell from the top bunk, and how he should have never been sleeping there in the first place. *Id*. Nicholson allegedly ignored Randle's request for immediate medical attention, and Randle was not seen by any member of Stateville's medical staff for another two days—during which time

6

he allegedly made repeated pleas for assistance as his neck and head pain worsened. *See id.* ¶ 18. The Court recognizes that these allegations are not robust, nor do they reflect repeated attempts by Randle to inform Nicholson of his medical condition. But at this stage in the proceedings, they provide a sufficient basis for the Court to infer that Randle suffered from a potentially serious medical condition and that Nicholson knew about the condition but turned a blind eye to it.[3] *See Perez*, 792 F.3d at 782 ("[O]nce an official is alerted to an excessive risk to inmate safety or health through a prisoner's correspondence, refusal or declination to exercise the authority of his or her office may reflect deliberate disregard.").

Nicholson advances two arguments in support of dismissal but neither are persuasive. First, Nicholson argues that Randle "offers no proof" that Nicholson heard Randle's verbal complaint on June 30. R. 61-1 at 5. But a court considers a plaintiff's well-pled allegations as true at the motion to dismiss stage; Randle need not "prove" his claims. *See McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010) ("[W]e accept [the complaint's] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor."). If appropriate, Nicholson may re-raise this argument in a summary judgment motion.

Nicholson argues next that he was not deliberately indifferent to Randle's medical needs because Randle was eventually seen by Stateville medical staff. R. 61-1 at 5-6. The problem with this argument, however, is that a plaintiff's receipt of some

---

[3] The Court reached a similar conclusion when it screened Randle's complaint pursuant to 28 U.S.C. § 1915A. *See* R. 17 at 4-5.

7

medical care does not automatically defeat a claim of deliberate indifference. *See Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007). Indeed, "[a] delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011); *see also Edwards*, 478 F.3d at 831 (guards could be liable for delaying treatment for painful broken nose by at least a day-and-a-half). Here, Randle allegedly told Nicholson on June 30, 2018, that he needed immediate medical assistance to treat the head and neck injuries he sustained two days prior. But Randle was forced to wait another two days before seeing any member of Stateville's medical staff. And during that time, his neck and head pain allegedly worsened as he could not eat or sleep. Dismissal is therefore unwarranted simply because Randle was eventually seen by medical staff. Nicholson's motion to dismiss Count I is accordingly denied.

Wexford

Wexford is a private company that contracts with the Illinois Department of Corrections to provide medical services at Stateville. See R. 59 ¶ 10. Wexford may be held liable under § 1983 pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Liability may be based on: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a

8

constitutional injury caused by a person with final policy making authority. *See McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).

Here, Randle argues that Wexford fails to oversee its employees and has "formal or informal [] policies or guidelines designed to delay and minimize the medical treatment to Stateville inmates in order to increase Wexford's profitability." R. 59 ¶¶ 38-39. But this is a conclusory statement, and Randle does not provide a single allegation to support it. *See Carter v. Baldwin*, 2018 WL 656086, at *8 (N.D. Ill. Feb. 1, 2018) (dismissing *Monell* claim where complaint contained thread-bare allegations of "cost-cutting policies"). He also fails to allege, as he must, how Wexford's policies or guidelines impacted the care he received. *See Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (The policy or practice "must be the direct cause or moving force behind the constitutional violation."). And to the extent he alleges that Wexford had a widespread custom of increasing profits at the expense of patients, he fails to bring forth any allegations suggesting that his experiences were something other "than a random event." *Thomas v. Cook Cnty. Sheriff's Office*, 604 F.3d 293, 303 (7th Cir. 2010).

To be sure, some courts in this district have allowed *Monell* claims to proceed with conclusory allegations of a policy or practice. *See Armour v. Country Club Hills*, 2014 WL 63850, at *6 (N.D. Ill. Jan. 8, 2014) (internal citation omitted); *see also White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (cautioning district courts not to apply a heightened pleading standard to *Monell* claims). But *some* facts must be plead to put the defendant on notice of the alleged wrongdoing. *Armour*, 2014 WL 63850 at

9

\*6 (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Here, there are none, so the Court cannot infer that a cost-cutting policy existed that would have impacted the kind of treatment Randle allegedly received. *See Peacock v. Rigsby*, 2016 WL 1383232, at \*3 (N.D. Ill. Apr. 7, 2016) (dismissing *Monell* claim against Wexford where plaintiff's "allegation of a cost-cutting policy is too speculative and untethered to his injury to support his claim"); *Sharif v. Ghosh*, 2013 WL 228239, at \*6 (N.D. Ill. Jan. 18, 2013) ("Plaintiff's contention of a policy or custom of inadequately treating inmates or refusing to order tests for them based upon financial reasons is at best speculative, as well belied by the records and attachments to his complaint."). The Court accordingly dismisses Randle's *Monell* claim against Wexford without prejudice.

## Conclusion

For the foregoing reasons, Miles and Nicholson's motion to dismiss, R. 61, is granted as to Miles and granted in part and denied in part as to Nicholson. Wexford's motion to dismiss, R. 76, is granted. Randle may file a motion for leave to file an amended complaint if he believes he can cure the deficiencies described in this opinion. That motion must be filed within 30 days or Count II against Nicholson and Count III against Wexford will be dismissed with prejudice. In the meantime, the parties in this case should meet and confer regarding a discovery schedule in advance of the status hearing set for January 22, 2021.

ENTERED:

*Thomas M Durkin*

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: December 11, 2020